# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN ROBERT MORRISON,<br><br>   Plaintiff,<br><br> v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>   Defendant. | Case No.: 1:17-cv-00632- JLT<br><br>ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF BRYAN ROBERT MORRISON AND AGAINST DEFENDANT NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY |

Bryan Robert Morrison asserts he is entitled to benefits under Titles II and XVI of the Social Security Act. Plaintiff argues the administrative law judge erred in relying upon the testimony of the vocational expert to determine Plaintiff can perform work existing in significant numbers in the national economy. Because the ALJ failed to resolve a conflict between the vocational expert's testimony and the *Dictionary of Occupational Titles*, the administrative decision is **REMANDED** for further proceedings.

## **PROCEDURAL HISTORY**

In 2013, Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income. (Doc. 9-3 at 13) In his applications, Plaintiff alleged his disability began on October 29, 2012. (*Id.*) The Social Security Administration denied the applications at the initial level and upon reconsideration. (*Id.; see also* Doc. 9-4) Plaintiff requested a hearing, and testified before the ALJ on December 17, 2014. (Doc. 9-3 at 13) At that time, the ALJ also received

testimony from two medical experts and a vocational expert. (*See id.*) The ALJ held a supplemental hearing on June 16, 2015, after which the ALJ permitted Plaintiff to submit additional medical evidence. (*Id.* at 13, 109)

On December 1, 2015, the ALJ issued an order finding Plaintiff was not disabled as defined by the Social Security Act. (Doc. 9-3 at 10-24) Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied the request on March 7, 2017. (*Id.* at 2-7) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## **STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## **DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

**A.  Medical Expert Testimony**

Dr. Sherman, a psychiatrist, testified as a medical expert at the administrative hearing on December 17, 2014. (Doc. 9-3 at 39, 69) She opined that the "best diagnosis" for Plaintiff's mental impairment was "adjustment disorder with depression and anxiety." (*Id.* at 69) She explained Plaintiff had "depressive and anxiety symptoms secondary to his injury." (*Id.*) In addition, Dr. Sherman stated, "One has to mention substance induced depressive disorder," because Plaintiff was taking Norco and it was "probably exacerbating his depressive symptoms." (*Id.*) Dr. Sherman also believed Plaintiff had "adjustment disorder with anxiety symptoms;" pain disorder, not otherwise specified; personality disorder, not otherwise specified; and opiate dependence because Plaintiff was "taking a significant dose of opiates." (*Id.* at 69-70)

According to Dr. Sherman, Plaintiff's impairments did not meet or medically equal any of the Listings. (Doc. 9-3 at 72) She testified that with the use of opiates Plaintiff had mild restrictions with activities of daily living, moderate difficulty maintaining social functioning, and moderate difficulty maintaining concentration. (*Id.* at 73) She opined that without the use of opiates, Plaintiff would have "greater functional ability, and all these functions would be mild." (*Id.*)

Dr. Sherman testified that, assuming the continued use of opiates, Plaintiff "could do simple, repetitive tasks." (Doc. 9-3 at 74) The ALJ then sought to clarify the work Dr. Sherman believed that Plaintiff could perform:

> Q: Now there is, there -- for simple, repetitive the number of steps is important because --
>
> A: Yeah.
>
> Q: One to two steps is unskilled, three to four steps is semi-skilled. So how many steps do you think he could handle on a simple, repetitive task basis?
>
> A: Unskilled.
>
> Q: One to two steps, right?
>
> A: One to two steps.

(*Id.*) Further, Dr. Sherman testified that Plaintiff could have "ordinary contact" with supervisors and coworkers, but she "would limit to a third of the time his contact with the public." (*Id.*)

If Plaintiff stopped using opiates, Dr. Sherman believed he could perform "[m]ore complex work," and "he would be beyond one or two step repetitive tasks." (Doc. 9-3 at 75) In addition, she opined that Plaintiff "could have contact with the public at that point." (*Id.*)

**B.  Vocational Expert Testimony**

Susan Creighton Clavell (the "VE") also testified at the first hearing on December 17, 2014. (Doc. 9-3 at 36, 79) The VE characterized Plaintiff's relevant work as electrician, DOT 824.261-010; electric motor control assembler, DOT 721.381-014; and fabricator, DOT 809.381-010. (*Id.* at 79-80) She explained that each of these positions required medium physical exertion in the *Dictionary of Occupational Titles*.[1] (*Id.*)

The ALJ then asked the VE to "assume a hypothetical individual with the same age, education, and experience as the claimant." (Doc. 9-3 at 80) The ALJ indicated the hypothetical person was limited to light work with additional ambulatory, postural, and environmental limitations. (*Id.* at 80-81) The ALJ stated, assuming "the continued use of opiates," the individual's mental capacity would be

---

[1] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The *DOT* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1).

limited to "simple, repetitive one to two step tasks." (*Id.* at 81) Further, the person was limited to "only occasional public contact," but "may have constant contact with coworkers and the supervisors." (*Id.*) The VE determined a worker with these physical and mental limitations could not to perform Plaintiff's past relevant work. (*Id.*) However, the VE opined other work was available, including: office helper, DOT 239.567-010; storage facility clerk, DOT 295.367-026; and mail room clerk, DOT 209.687-026. (*Id.* at 82) The VE testified each of the positions required light exertion and Level 2 Specific Vocational Preparation. (*Id.*)

Plaintiff's counsel questioned the VE regarding the office helper position to determine the duties contemplated in such a position, inquiring if it "involve[d] the person having to get up, move items, [and] carry files." (Doc. 9-3 at 86) The VE responded:

> Every employer that employs unskilled office helpers is different. That may come into play. It may not. They, you know, they just do general office paperwork activities. They might photocopy, they might sort some papers for somebody. It just varies. It's a wide variation.

(*Id.* at 86-87) She continued that the job "changes by different employers, but each employer, whatever they're doing, is pretty much repetitive." (*Id.* at 87)

**C.    The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff had not engaged in substantial gainful activity after the alleged onset date of October 29, 2012. (Doc. 9-3 at 16) At step two, the ALJ found Plaintiff "has the following severe impairments: tibial plateau fracture of the right lower extremity, status- post open reduction and internal fixation; traumatic osteoarthritis of the right knee; torn right medial meniscus; adjustment disorder secondary to injury; pain disorder; personality disorder; and opiate dependence." (*Id.*) At step three, the ALJ opined these impairments did not meet or medically equal a listed impairment. (*Id.* at 16-18)

Next, the ALJ determined Plaintiff had the residual functional capacity "to perform sedentary to light work," with additional postural and environmental limitations. (Doc. 9-3 at 18) In addition, the ALJ found: "[H]e is limited to simple repetitive tasks, with constant contact with supervisors and co-workers, and only occasional contact with the public." (*Id.*) With this residual functional capacity, the ALJ determined Plaintiff was "unable to perform any past relevant work." (*Id.* at 22) However, at step

5

five, the ALJ found jobs "exist in significant numbers in the national economy that the claimant can perform," including office helper, storage clerk, and mail room clerk. (*Id.* at 24) Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 23-24)

## **DISCUSSION AND ANALYSIS**

Plaintiff asserts the ALJ erred in relying upon the testimony of the vocational expert at step five of the sequential evaluation. (Doc. 12 at 10-12) He contends the jobs identified by the VE exceed the limitation to "one or two step tasks" as the ALJ limited Plaintiff to in the hypothetical posed to the VE, and the testimony conflicts with the *Dictionary of Occupational Titles.* (*See id.*) On the other hand, Defendant argues that the ALJ properly assessed Plaintiff's mental impairments in limiting Plaintiff to "simple repetitive tasks," and the step five determination was proper. (Doc. 17 at 10-13)

**A.    Plaintiff's Residual Functional Capacity**

A claimant's residual functional capacity is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating a RFC, the ALJ weighs medical and other source opinions. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

The ALJ indicated he gave "controlling weight" to the opinion of Dr. Sherman. (Doc. 9-3 at 21) The ALJ "ultimately adopt[ed] the functional limitations [identified by Dr. Sherman] and incorporated them into the established functional residual capacity." (Doc. 9-3 at 21) The ALJ noted that "the residual functional capacity … assumes the continued use of opiates by claimant; his mental functional capacity would be higher if he stopped or significantly reduced that use according to Dr. Sherman." (*Id.*) Specifically, Dr. Sherman testified that, assuming the continued use of opiates, Plaintiff could handle work that involved "[o]ne to two steps." (*Id.* at 74) Dr. Sherman opined that if Plaintiff stopped using opiates, then he "he would be beyond one or two step repetitive tasks." (*Id.* at 75) However, in the RFC, the ALJ limited Plaintiff to "simple repetitive tasks." (*Id.* at 18) Thus, the ALJ implicitly rejected the limitation to "one to two steps" identified by Dr. Sherman.

When evaluating the medical record, an ALJ may reject an opinion identified by a physician,

whether it is contradicted by another. *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) To do so, the ALJ must set forth legally sufficient reasons to support the decision to reject the limitation. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Here, the ALJ offered no explanation regarding the decision to omit the limitation to "one to two step tasks" from Plaintiff's RFC. Thus, the ALJ erred in evaluating the opinion of Dr. Sherman and incorporating the limitations assessed in the RFC.

**B.       Reliance upon the Vocational Expert's Testimony**

At step five, the burden shifts to the Commissioner to show that Plaintiff can perform other substantial gainful activity and a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984); *see also Osenbrock v. Apfel,* 240 F.3d 1157, 1162 (9th Cir. 2001) (discussing the burden shift at step five). To make this determination, the ALJ may rely upon job descriptions in the *Dictionary of Occupational Titles* ("DOT"), or the ALJ may call a vocational expert "to testify as to (1) what jobs the claimant, given his or her functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999); *see also* Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704 at *2 ("In making disability determinations, we rely primarily on the DOT . . . for information about the requirements of work in the national economy.")

       1.     Hypothetical Posed to the VE

The ALJ must pose "hypothetical questions to the vocational expert that 'set out all of the claimant's impairments' for the vocational expert's consideration" when eliciting testimony. *Tackett*, 180 F.3d at 1101 (quoting *Gamer v. Sec'y of Health & Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987)).

The ALJ asked the VE to consider a person limited to "one to two step tasks," though the ALJ ultimately omitted the limitation from the RFC. (Doc. 9-3 at 81) Because the hypothetical question posed to the VE incorporated the limitation identified by Dr. Sherman, the Court must determine whether the VE's testimony supports the conclusion at step five that Plaintiff is able to perform work.

///

///

///

2. Conflict between the VE's testimony and the *Dictionary of Occupational Titles*

Pursuant to SSR 00-4p[2], occupational evidence provided by a vocational expert "generally should be consistent with the occupational information supplied by the DOT." *Id.*, 2000 WL 1898704 at *2. When there is a conflict between the testimony of the vocational expert and the *Dictionary of Occupational Titles*, "the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert testimony] to support a determination or decision about whether the claimant is disabled." *Id.* Further, SSR 00-4p provides:

> At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the [vocational expert] evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the [vocational expert] is reasonable and provides a basis for relying on the [vocational expert] testimony rather than on the DOT information.

*Id.* Accordingly, the Ninth Circuit has determined an ALJ must inquire "whether the testimony conflicts with the *Dictionary of Occupational Titles*," and may only rely upon conflicting expert testimony when "the record contains persuasive evidence to support the deviation." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007); *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

The ALJ asked the vocational expert to consider a hypothetical individual limited to performing "simple, repetitive one to two step tasks." (Doc. 9-3 at 81) In addition, the person could have "only occasional public contact," but "may have constant contact with coworkers and the supervisors." (*Id.*) With these limitations in mind, the vocational expert responded the person could perform light work including: office helper, DOT 239.567-010; storage facility clerk, DOT 295.367-026; and mail room clerk, DOT 209.687-026. (*Id.* at 82)

a. Whether there is a conflict

In the *Dictionary of Occupational Titles*, each job each job description includes a General Educational Development ("GED") definition that "embraces those aspects of education (formal and

---

[2] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *see also Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) ("SSRs reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations").

informal) which are required of the worker for satisfactory job performance." *Salas v. Astrue*, 2011 WL 2620370 at *5 (E.D. Cal. June 29, 2011) (quoting *Grigsby v. Astrue*, 2010 WL 309013, at *2 (C.D. Cal. Jan. 22, 2010)). The GED scale includes a scale for "reasoning development," which ranges from Level 1 (low) to Level 6 (high).

Reasoning Levels 1 through 3 are defined in Appendix C of the *Dictionary of Occupational Titles* as the following:

> Level 1: Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.
>
> Level 2: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.
>
> Level 3: Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

DOT, Appendix C: Components of the Definition Trailer, 1991 WL 688702; *see also Rounds v. Comm'r of Soc. Sec. Admin*, 807 F.3d 996, 1002-1003 (9th Cir. 2015).

As Plaintiff observes, the position of office clerk requires Reasoning Level 2, and the positions of storage facility clerk and mail room clerk require Reasoning Levels 3. *See* 1991 WL 672232 (office helper); 1991 WL 672594 (storage facility clerk); and 1991 WL 671813 (mail room clerk). Plaintiff contends he is unable to work in the positions identified by the vocational expert, because "[a] capacity for one or two step work has an apparent conflict" with the Reasoning Levels 2 and 3, as required by the jobs identified. (Doc. 12 at 9)

Significantly, the Ninth Circuit determined that Reasoning Level 2 conflicts with a limitation to "one and two step tasks." *Rounds*, 807 F.3d at 1003. The jobs identified by the vocational expert all required Reasoning Level 2 on the GED scale, and the plaintiff argued her limitation to "one to two-step tasks" matched Level 1. *Id.* The Ninth Circuit agreed, explaining:

> There was an apparent conflict between Rounds' RFC, which limits her to performing one- and two-step tasks, and the demands of Level Two reasoning, which requires a person to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." The conflict between Rounds' RFC and Level Two reasoning is brought into relief by the close similarity between Rounds' RFC and *Level One* reasoning. Level One reasoning requires a person to apply "commonsense understanding to carry out simple one- or two-step instructions."

9

*Id.*, 807 F.3d at 1003. Thus, the Ninth Circuit determined there is an apparent conflict between a claimant's limitation to one and two step tasks and a job requiring reasoning exceeding Level 1. *Id.*; *see also Lara v. Astrue,* 305 Fed. Appx. 324, 326 (9th Cir. 2008) ("Reasoning Level 1 jobs are elementary, exemplified by such tasks as counting cows coming off a truck, and someone able to perform simple, repetitive tasks is capable of doing work requiring more rigor and sophistication-in other words, Reasoning Level 2 jobs"); *see also Grigsby v. Astrue*, 2010 WL 309013, at *2 (C.D. Cal. Jan. 22, 2010) ("The restriction to jobs involving no more than two-step instructions is what distinguishes Level 1 reasoning from Level 2 reasoning").

Because the jobs identified by the vocational expert require Reasoning Levels 2 and 3, the Court finds there is a conflict between the VE's testimony and the descriptions set forth in the *Dictionary of Occupational Titles*.[3]

### b. Whether the record supports the deviation

There is no indication in the record that the ALJ was aware of the conflict. The ALJ did not question the vocational expert regarding the mental limitations for the jobs identified or ask whether her testimony was consistent with the *Dictionary of Occupational Titles*. As a result, the ALJ was unable to resolve the conflict between the two vocational resources, as is required by the Ninth Circuit. *See Johnson*, 60 F.3d at 1435; *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) ("in order for the ALJ to rely on a job description in the *Dictionary of Occupational Titles* that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation"). Because the ALJ did not address the apparent conflict, and the vocational expert did not explain her reasoning, the record cannot support the deviation from the *Dictionary of Occupational Titles*.

## C. Remand is Appropriate in this Matter

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative

---

[3] Notably, the Ninth Circuit also determined "there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning." *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015). The Court explained, "it may be difficult for a person limited to simple, repetitive tasks to follow instructions in 'diagrammatic form'"—as required with Reasoning Level 3—because "such instructions can be abstract." *Id.* (citation omitted).

agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The ALJ failed to explain why he rejected the limitation to "one to two step tasks" and instead limited Plaintiff to "simple repetitive tasks." In addition, the ALJ failed to address the apparent conflicts between the vocational expert's testimony and the *Dictionary of Occupational Titles*. Based upon the record, the Court is unable to determine whether Plaintiff is able to perform work existing in significant numbers in the national economy. Accordingly, a remand for further proceedings is appropriate in this matter. *See Zavalin,* 778 F.3d at 848 (an ALJ's failure to reconcile apparent conflict was not harmless where the Court "cannot determine [from the record] whether substantial evidence supports the ALJ's step-five finding"); *see also Reaves v. Colvin,* 2016 WL 775754, at *8 (D. Or. Feb. 24, 2016) (remanding the action for further proceedings where "the ALJ excluded the one- to two-step task limitation from [the] plaintiff's RFC without explanation and neither recognized nor explained the conflict between the limitation and Level Two Reasoning").

## **CONCLUSION AND ORDER**

For the foregoing reasons, the Court concludes the ALJ erred in assessing Plaintiff's RFC and failing to address the apparent conflict between the testimony of the vocational expert and the *Dictionary of Occupational Titles*. Because the ALJ failed to apply the correct legal standards, the testimony of the vocational expert cannot support the conclusion that Plaintiff is able to perform work in the national economy. *See Zavalin*, 778. F.3d at 846; *Rawlings v. Astrue*, 318 Fed. Appx. 593, 595 (2009) ("Only after determining whether the vocational expert has deviated from the *Dictionary of Occupational Titles* and whether any deviation is reasonable can an ALJ properly rely on the vocational

11

expert's testimony as substantial evidence to support a disability determination.")  Consequently, the ALJ's decision cannot be upheld by the Court.  *See Sanchez*, 812 F.2d at 510.  Because the Court finds remand is appropriate on these grounds, it offers no findings on the remaining arguments presented in Plaintiff's opening brief.

Based upon the foregoing, the Court **ORDERS**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Bryan Robert Morrison and against Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **September 20, 2018**   **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE